Good morning, Your Honors. My name is Paul Matt. I represent Russell Nickel and his former pyrotechnic company, Precision Theatrical Effects, Inc. The District Court granted summary judgments matter to all the defendants based on a finding that the plaintiff's evidence was simply not material and raised no genuine disputes. In that this case involves multiple defendants and multiple causes of action, both federal and state, and various defenses, including immunity, I will address, in the order of the severity, what we believe are the errors that the District Court made. The factual background of this case is essentially about two sworn statements, one on November 7, 1999, by Agent Fakosh in a search warrant application, and a second on April 11, 2000, by Chief of Police Woods in an affidavit in support of an arrest warrant. The affidavit in support of the sworn statements by both these officers contain material omissions and misstatements. In both of the sworn statements, Defendant Woods and Defendant Fakosh represent Mr. Ringer, who is CI-440, as a confidential informant. In Montana, an informant can be represented as a confidential informant if he has provided reliable and accurate information to police before. With the personal observation of a confidential informant... What was his status if he wasn't a confidential informant? That was for the magistrate to understand. He was represented as a confidential informant, Your Honor. Well, no, I understand. But what, if he had been accurately described, what would he have been described as? As an informant. Just not as a confidential informant? Not as a confidential informant. An informant whose reliability cannot be vouched for without independent police cooperation and investigation. So, informant as opposed to simply a good citizen who's supplying information that he's come across? Correct, Your Honor. A good citizen's reliability is basically shown by the nature of the circumstance under which he comes to the information. Mr. Ringer, at the time, was not represented as a confidential informant, and therefore, obviously, the magistrate had no opportunity to evaluate him as such for his reliability. So, it doesn't really matter. Confidential is just a modifier. It's not an informant status that you're concerned about. I'm concerned, Your Honor, about the fact that he was represented as a confidential informant. But I'm trying to understand your argument. What's the difference between a confidential informant and an informant? Because in Montana, a confidential informant is a person who has provided reliable and accurate information in the past. His personal observations do not need independent cooperation and can be used as a basis for finding probable cause. Mr. Ringer was not a confidential informant. He had never worked with law enforcement before, and there was no independent corroboration of any evidence that he provided. Mr. Ringer's information on the search warrant applications on November 7th of 1999 were the sole reason that those applications were granted. His information in Defendant Woods' affidavit on April 11th, 2000, provided a substantial basis that probable cause was found there. He is not reliable under Montana law. All of his information should be excised from both of those affidavits. Do we, in terms of our standard of review, do we revisit de novo the determination by the state-issued magistrate who found probable cause? And do we look at the Montana District Court, the state district court judge's rulings on the criminal motion to suppress, in terms of deciding whether or not you have a valid claim under Montana law on this point? Well, Judge Solomon, I believe this court does review de novo, and in turn, we must review the reliability that the magistrate gave or may have given to the representation of Mr. Ringer as a confidential informant. I guess the question I'm really asking is do we give no deference at all to the fact that the magistrate judge initially, or the issuing magistrate, if I can use that term, was convinced by the showing that was made at the time that the warrant was authorized and the information was found? I would say you do give none, Your Honor, because it must be reviewed. None? None, I would say, because it must be reviewed in view of what the magistrate saw. He was misled by the information. He did not, in turn, review the affidavits in accordance with the reliability requirements under Montana law. But you did make this argument, did you not, in connection with the criminal motion to suppress, and the Montana state judge rejected that argument, did he not? No, Your Honor. We asked for a blank site hearing, and the district judge said that that was not available under Montana law. He dismissed the... So you can't challenge, under Montana law, the veracity of a warrant on the basis that it was issued on false and knowingly misrepresented... That's what the district judge said, Your Honor, about ten days before trial. And so we did not. That was his distinction. And since you won at the criminal trial, you never had a chance to appeal that ruling. Correct. There was no incentive to go further on that. I'm still trying to understand Montana law. My understanding of Montana law was that if the person's identified as a confidential informant, then the testing officer has to then make the statement that they have, in fact, provided reliable information in the past. You're saying it's presumed, just by the calling of them as confidential informant? No, I'm not saying it's presumed, Your Honor. I'm saying it could have been presumed, and the judge may have been misled by that. But yes, you are correct in saying that when a person is represented as a confidential informant, the affidavit should also state that he has given reliable information in the past. But now if the person is described as just a good citizen, someone who's come forward and identified themselves by name, so that that generates the degree of reliability. So I'm trying to understand, if Fekas had said, Ringer is a citizen who came, you know, we have an informant who's a good citizen who came forward, he wouldn't have had to say anything more, correct? He would have had to give the circumstances under which Mr. Ringer came forward with the incriminating information. He would also have been required to put in the affidavit that he knew Mr. Ringer was a 10 percent owner in Mr. Nichols' business. Yes, that would have enhanced the credibility. Our question is motives, Your Honor. So is it your position that the police have to put all of the impeachment evidence that they may know into the affidavit at the time they obtain the search warrant? No, I'm saying in a review of it, in the totality of what else is in the affidavit, either omissions or misleading statements, it goes to determining whether or not the court was misled by the representations. No, that's not my question. I think you're arguing by innuendo that because Ringer was a 10 percent co-owner in the business, that gave him a bias or motive against Mr. Nichol that may have animated why he cooperated with the police in the first place. Are you not? Well, that is not a major point at all, Your Honor. I'm not saying that. I'm trying to understand, so he's a 10 percent owner in the business. As Judge Fischer observed, if I were the magistrate, that would give me some confidence that he knows what he's talking about. If the next thing that he says is, I saw Mr. Nichol in the process of cooking something in the lab. Well, in the event he had been represented as a citizen informant, Your Honor, possibly the judge could have looked at it either way. He was not represented as a citizen informant and the judge could not determine his credibility as a citizen informant. The judge was represented. But this is not a situation where Mr. Ringer was a drug user or drug dealer who was working off of beef with local law enforcement by manufacturers, right? Correct. So if we're looking at this under whatever Montana would call it, we would call it a Frank's analysis. Where's the harm here? Where's the misrepresentation that materially affected the finding of probable cause? The representation, Your Honor, and I hope I'm not reiterating myself, is that he was represented as a person who had given reliable information to police officers in the past. Is that what he said? Because he was represented as a confidential informant. That's the problem I'm having. You're saying Montana law seems to say that if he's designated as a confidential informant, then there must be an allegation, a statement by the attesting officer to validate this C.I.'s reliability because he is confidential. Yes. And all he was called was confidential. And you're saying the magistrate judge therefore was precluded and not incented to inquire into his bonafides. But it seems to me under Montana law, the magistrate would have said, well, yeah, you called him a confidential informant, but where's the attestation of his reliability? Right. And then he would have said, well, Your Honor, here's who he is, this guy Ringer. And he said, well, then he's a citizen. That would have been a different situation, Your Honor. And then the court could have tried to investigate his reliability as a citizen, but the court never had that opportunity. Okay, you're out of time, but just to, I'll give you a minute on rebuttal, but I just want to say, jump over to the police chief. The argument there is, I think, similar that the sources of information were potential competitors and the like, and that she had omitted the fact that in the searches, there were no drugs were found. Is that correct? Right. She says that they were sent in, but she does not put in that they all came back negative. They came back negative. And as you see in my brief, I have other omissions and misrepresentations. Except the lab had confirmed that the broken traces, correct? Those were on the other informant. That was Renee Parkin, CI-437. She had brought in two vials with residue. Right. And she said she'd received those from Mr. Nichols. Yes, she did. Okay. So it's not accurate to say that they had no evidence whatsoever that Mr. Nichols was involved in manufacturing controlled substances. They did have corroboration of the other informants. They did not have corroboration of Mr. Ringer's information. The corroboration of Renee Parkin's was by what she brought in. Her evidence was not sent to the DEA lab. That was sent to a state lab in another analysis. But what difference does that make? A qualified chemist said, I find trace amounts here of precursor chemicals and methamphetamine. That corroborates the informant who says, Nichols gave it to me. Yes, Your Honor. And I say, 347 is all that's left in this affidavit for you to evaluate in effect. Do you find it substantial? Sure. Okay. That's all right. You'll have a minute for rebuttal. Yes. I'm taking your time. Okay. Good morning, Your Honors. I'm Andy Forsythe and I represent Mr. Facosh, the investigating officer. With me at council table is Kristi Hansen, who represents Maury Woods, the Chief of Police in the City of Columbus, and Steve Limit ourselves to three minutes, more or less. However, should the court have interests in the other defendants, I'm happy to shorten my time. Okay. Well, let me get to focus on one that's bothering me that hasn't been raised yet. And under Montana law, it seems to have a very strict standard for searches of homes. And I'm looking at the State v. Colusa, 901 P. 2nd, 107, Montana, 1995. And in that decision, they seem to require extremely specific information to justify a search warrant of a home. And I don't see that in the search warrant of federal law under that. It seems to me that that's improper. I mean, in other words, the district court should have been applying Montana law because that would seem to be the standard. Or am I wrong? Well, I would suggest that there were two, perhaps two, standards involved in reviewing the search of the home under the Section 1983 claim against Mike Klein. I think it was in the violation of the Fourth Amendment. I think it's reasonable to use the search of the home. I think when you get to the state law claim, right to privacy, then you... Why would that be the case if we normally look to the state substantive law for things like the statute of limitations? Is that just procedural as opposed to substantive? Well, I guess I was suggesting that the qualified immunity defense Mike Klein has would be a federal law defense of... He doesn't have one, as I understand it, under Montana law. No, that's true. So I can see why you want federal law to apply. Yes, we do. However, let me take a look... But what's the law? Well, if we look at state law, I think Montana cases, I mean, they vary, but I think repeatedly Montana has said that Illinois v. Gates, the federal U.S. Supreme Court case, is the standard to be applied in Montana. I think if you look at recent Montana cases, they're repeatedly saying we follow Illinois v. Gates in Montana. So my real answer is that's what our court keeps saying. Now, can you look at individual cases and say, well, I don't think they followed it very closely there. I think you could. But there were two cases, one brought up by me as a late sight to the court, and the other brought up to my opponent as a late sight to the court, Barnaby v. Zito. And they're a little different, but they both say we follow Gates, we're looking at the search of a home, it's the totality of the circumstances, and you have to make a fact-specific, common-sense judgment. Now, do they come out in different places on that? Yes, they do. But in actually the case, the most recent case that I'm aware of, Zito, cited by actually my opponent in a supplemental site to the court, the court affirmed the search of a home on a confidential informant with fairly minimal corroboration on what I would suggest is a weaker affidavit than the affidavit in this court. But I — Well, the problem I see, at least under looking at the Colusa case, was that the allegations as to the business were — may have been arguably sufficient, but as to the home, basically guilt by association. Maybe under federal law that might work, but — Well, here, let me suggest to you the answer under state law. And I agree with you. Certainly, if you look at Renee Parkins, the strong informant here, the one with the corroboration with the vials of meth, she's talking about what she saw at the business. The business is where the lab was. I understand that. Just for other purposes. So, what about the home? In the Zito case, cited to your court recently by my learned opponent, they comment on the value to be placed on a law enforcement officer's explanation of experience in the meth trade. And — or not in the meth trade in that, because I think it was marijuana. But experience with drug issues, and suggest that an experienced officer can present in his affidavit inferences about likely places to find contraband. In our case, it isn't just Parkins in the affidavit, and it isn't just Ringer. It's also Officer Fakoch, 20 years experience, 4 years experience in drugs. You clearly understand the law that this would be good enough for all the reasons you articulate. But I'm having the same problem Judge Fischer is having. Why under state law? You know, is the same answer — is it the same answer under Montana law? Well, you know — and I'll confess a little frustration. The Montana court does keep saying our real standard is Illinois v. Gates, which is the federal standard, which is the totality of the circumstances. The district court didn't address this issue, though. It just analyzed it under federal law. Well, the — oh, the federal district court? You know, I think that in their opinion, they perhaps could have delved into state law further, right, in his opinion. And you're right. The underlying criminal case, the state judge looked at the search of the business — They didn't reach a question on the home. Well, they didn't because the state didn't contest the motion to suppress. Yeah. So that sort of raises a question, too. It does. All right. Have I — you know, I've used up more time than I should have, Your Honors. That was the issue. I don't know if there are other questions, but we can get them out of your successor in interest here. Hopefully, Your Honors. Your Honor, I'm Kristen Hanson. I represent Chief Woods in this matter. Before I start, do you have any questions? Well, I'm curious about her omission of the drug — the lab results. I mean, that seems a fairly material piece of information for her to have left out of the — her affidavit in support of the information. The affidavit — in the affidavit, of course, we acknowledge that she doesn't state that the tests came back negative from the DEA lab. As Nickel has argued, if we added that information in where, you know, the affidavit would say we sent this off to the DEA lab, it came back negative, what Mr. Nickel omits there is that it would also say, but the DEA lab report did show precursor chemicals. So it's sort of a 50-50, you know, you win some, you lose some if you add the rest of the information. Sounds like more like 25-75. Okay. But under Montana law, a possession of precursor chemicals is a crime in itself. So that information added to that would also have been further support for probable cause finding. You're back to 50-50 now. Thank you. They were the precursor chemicals used in the manufacture of methamphetamine. Yes, they were iodine, hydroic acid, and red phosphorus. And those are specifically delineated in Montana law. Okay, you got me to 51 percent. Any of those used in making fireworks? None. No, and the DEA lab report does show that also. Okay, 52 percent. Well, okay, this is serious. But the other question I have is whether you have any information about the state warrant. Now, that isn't your client's problem, but do you share the frustration or uncertainty about Montana law, about searches of homes? Your Honor, I have to confess I didn't focus on that aspect. I don't want to set you off, Mark. Go ahead. What I did want to point out with respect to Mr. Nichols' argument is that Montana law, I think the standard has been a little confused here with respect to a concerned citizen. In the Barnaby case that just came out in 2006, the case states, the Montana Supreme Court states, the firsthand report of a concerned citizen generally represents reliable information. The statement by Mr. Matt that you have to be called a concerned or a confidential informant, you have to have presented information previously to the court, that's only part of the standard. There's other things you can have done to have presented yourself as a confidential informant. One of those things is being a concerned citizen. What if a citizen wants to report criminal activity but specifically says to Chief Woods, please don't use my name, I'm afraid of retaliation? Typically, that's how it happens. What does that make that source of information under Montana law? With respect to the information as far as I understand it, that makes that person a confidential informant until such time as it gets to trial and then that informant's identity is going to come out. It's not as if this person is anonymous. It's not a tip. With the confidentiality, it seems to me, I would just assume, I'm not an expert anywhere close to Montana law, but when you slap the label confidential on, then there's got to be some notion as to why the informant is reliable. And if they're identified as a concerned citizen, then the law says that's good enough because they've given their name. They're not. But if they seek confidentiality, then doesn't the declaration have to say it's a confidential informant of a concerned citizen who came forward? That way, at least the magistrate knows whether it's turned out of a criminal enterprise or somebody who is an honest citizen walking in off the street. I think there's a disconnect here with the fact that in Montana law, there is no such thing as a confidential informant. That's not statutory. That's not procedural. That's not anything. Essentially, it's an internal DOJ something. It's an internal DOJ procedure. State DOJ? State DOJ, right. And the state DOJ internal procedure says, okay, if we get this informant, we'll tell them what the rules are. We'll sign them up. We'll give them a number. But there's nothing under Montana law that says they have to, and there's not even really that much of a procedure within the DOJ. It's just a method, really, of assigning somebody a number until such time as that person's identity comes out. It's not significant under Montana law. You can be called. In this Barnaby case, you'll notice that the court says the application for warrant did not distinguish between confidential informant, citizen informant, and concerned citizen, and we will follow that for this opinion. It's not that big of a deal, really, and I've used up way too much of my time. Any further questions? Thank you, Your Honor. Thank you. Good morning, Your Honors. I'm Steve Mills. I represent Robert Edelman in Stillwater County in this case. Criminal investigative reports prepared by various law enforcement agencies that were involved in this matter were provided to the Stillwater County Attorney's Office. Now, based upon the information derived from those investigative reports, a staff member of the Stillwater County Attorney's Office prepared a criminal information against. Mr. Mills, can I save you some time? Embar versus Packman, I have nothing further to say. And Kalina versus Fletcher. That's, I guess, all I need to say. Okay. Your Honors, with respect to the DEA results not being reported in the affidavit as coming back negative, there were 36 items sent in. Well, when you say negative, it isn't quite accurate. Negative for controlled substances, Your Honor. Well, yeah, but there's more here. We've got precursor chemicals, which has evidentiary significance in a drug manufacturing investigation. Well, that's possible, Your Honor, also. But Mr. Nickel, first of all. It's pretty relevant in my experience that it suggests that somebody's making controlled substances that don't have anything to do with fireworks but have everything to do with methamphetamine. Well, saying they have nothing to do with fireworks is not completely correct, Your Honor. There's a report that says they're not used in the making of commercial fireworks. Mr. Nickel was a pyrotechnic manufacturer. He didn't make commercial fireworks. But more importantly, Your Honor, the three precursors, there's like 15 precursors, but the three precursors were found in individual containers, marked. The affidavit of Chief Wood says that Mr. Nickel had those three precursors in a preparation compound or a mixture, mixed together. Now, that obviously gives the connotation that they were why would they be mixed, unless he was making methamphetamine or something. Well, they were not mixed, Your Honor. They were in individual containers. Mr. Nickel had all kinds of headaches, a state-of-the-art lab there. So the idea that the precursors had some kind of significance is taken away when you say they are not in a compound, they are not in a mixture. They are there by themselves. Chief Wood's affidavit also, Your Honor, as I said, has that DEA thing. It has Mr. Ringer being misrepresented. It has Mr. Ringer saying he saw Mr. Nickel manufacturing methamphetamine. The statement Mr. Ringer gave on 11-7-99 to Agent Fakosh says nothing of that sort. It says he saw something. Now, if I may quickly address your situation with absolute immunity. Absolute immunity, Your Honor, a prosecutor neither is nor should consider himself an advocate before he has probable cause. In this case, we know from the record that defendant Edelman was involved in the preparation and probably did prepare Maury Wood's affidavit. She says she walks in that day, reviews it, and signs it. Okay. Let me see if I can cut to the quick here. If we conclude that notwithstanding your best efforts to convince us to the contrary, there is probable cause for the issuance of the criminal information, you lose under EMBLAR, do you not, with regard to Mr. Edelman? If you find probable cause. All right. But where I'm going with this is that Mr. Edelman states three times in his testimony that he just his only job was to take the affidavit, the signed affidavit by Chief Woods, the one we've been discussing, and then determine if there's probable cause. Ergo, there is no probable cause when Mr. Edelman is preparing that affidavit. The record does not show who put those misrepresentations in there. Chief Woods says she didn't. Mr. Edelman says the secretary did. Well, we're left with that. But my real point being, this was before probable cause by Mr. Edelman's own testimony. He was not an advocate at that point. That's not the judicial process. Okay. We have the briefs. Believe me, we've combed through these briefs. Thank you very much. The argument was helpful. And Nickel v. Woods is submitted. The next case on calendar is Boubian v. Barnhart, which has been submitted.
judges: Fisher, Tallman, Ezra